OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: July 9, 2014
Date Decided: July 21, 2014

Andrew C. Durham, *pro se*
7440 Fountain Head Drive
Annandale, Virginia 22003

John G. Harris
David B. Anthony
Berger Harris LLP
1105 North Market Street, 11th Floor
Wilmington, Delaware 19801

Re: *Durham v. Grapetree, LLC*
Civil Action No. 7325-VCG

Dear Counsel and Litigant:

A father of five gave his children two rental properties, one in Costa Rica and the other in St. Lucia. These siblings then incorporated a Delaware limited liability company, Defendant Grapetree, LLC ("Grapetree" or "the LLC"), to manage these properties. This task, however, has not been easy, largely as a result of the deep animus running between certain members of the Durham family. Andrew Durham, the only non-managing member of Grapetree, has brought this litigation seeking reimbursements by the LLC for expenses incurred in connection with these vacation properties.[1] I previously determined that Andrew,[2] as a

---

[1] A detailed recitation of the facts can be found in my Post-Trial Letter Opinion. *See Durham v. Grapetree, LLC*, 2014 WL 1980335 (Del. Ch. May 16, 2014).
[2] I refer to members of the Durham family by their first names to avoid confusion; no disrespect is intended.

member of the LLC, is entitled to be reimbursed in connection with certain expenses incurred on behalf of the LLC, but that he had not met his burden as to specific expenses for which he sought reimbursement. I invited further submissions on the amounts, if any, to which Andrew was due, and address this pending issue, the last issue remaining in this litigation, below.

A. *Background*

On March 14, 2012, Andrew, acting *pro se*, filed a Complaint, subsequently amended, alleging both direct and derivative claims against the LLC. The derivative claims were withdrawn, and the remaining request for reimbursement was addressed first in Cross-Motions for Summary Judgment and then, after my finding that the pertinent language in the governing Operating Agreement was ambiguous, during a one-day trial held on February 17, 2014. On May 16, following the submission of post-trial closing arguments, I issued my Post-Trial Letter Opinion.

In my Post-Trial Letter Opinion, I found, based on the managing members' course of conduct, that Andrew was "entitled to reimbursement for all expenditures under $2,000 made on behalf of the LLC."[3] Nevertheless, Andrew had not, at trial, testified as to the authenticity of the documentation provided to the Court supporting his reimbursement requests. He also did not aver under oath as to the

---

[3] *Durham*, 2014 WL 1980335, at *5.

accuracy of that documentation. However, instead of simply finding that Andrew had not satisfied his burden, and in the interests of a just resolution of this matter, I afforded him the opportunity to authenticate his supporting documentation, post-trial. Specifically, I provided Andrew the opportunity to "file a memorandum explaining the expenses he incurred and how they benefited Grapetree, as well as the documentation to support these requests accompanied by appropriate affidavits."[4]

Although I was unable, in my Post-Trial Letter Opinion, to further resolve the issue of which requested reimbursements were appropriate, I provided guidance to the parties that narrowed the scope of eligible reimbursements. In particular, I found that Andrew was only permitted to seek reimbursements for expenses incurred within three years of the date his Complaint was filed; that he was not entitled to recoup litigation costs; that reimbursement for travel expenses was limited to trips that were taken on behalf of the LLC; that his personal loan to his brother Davis was not reimbursable; and that the cost of artwork he unilaterally purchased for the rental properties was not reimbursable, although this artwork remained the personal property of Andrew.[5]

On June 5, 2014, Andrew filed his Opening Memorandum. Grapetree filed its Answering Memorandum on June 26, 2014, and Andrew filed his Reply

---

[4] *Id.* at *7.
[5] *Id.* at *6.

Memorandum on July 9, 2014. At trial, Andrew sought $28,983.14 plus interest, while Grapetree argued that the LLC owed Andrew no more than $1,504.90.[6] However, in his Reply Memorandum, Andrew adjusted his request to $20,381.70 plus interest, noting that there may also have been a payment made to him by the LLC "in the summer of 2014 [that] has not yet been incorporated into his final accounting."[7] Despite my ruling, Andrew still seeks reimbursements for all of his travel expenses, as well as artwork he purchased for the vacation properties.[8] For the reasons that follow, I find that Andrew is entitled to $1,504.90 plus pre- and post-judgment interest at the legal rate.

B. *Andrew Has Not Met His Burden*

In connection with his Opening Memorandum, Andrew submitted an Affidavit in which he "swears under oath and the penalties of perjury that every document he has submitted is true and correct."[9] Andrew contends that this Affidavit "is Plaintiff's averment(s) as best as he can verifying that every single document he has submitted to the Court and every statement he has made is

---

[6] Although Grapetree adjusts this amount to $345.23 in its Answering Memorandum, based on Andrew's "random sampling" and certain reimbursements already made, I only "reopen[ed] the record for the limited purpose of allowing the Plaintiff to attempt to authenticate the exhibits he contends support his request for reimbursement," and thus find it appropriate to consider only evidence submitted as of the date of trial in determining the appropriate reimbursement amount. *See id.* at *5.

[7] Pl.'s Reply Mem. at 12.

[8] *See, e.g.*, Pl.'s Op. Mem. at 12.

[9] *Id.* Ex. A.

accurate and the absolute truth."[10]   In his Opening Memorandum, Andrew reiterates that he "has averred repeatedly [in this litigation] as to the accuracy of all of the receipts and invoices."[11]   Andrew has made no further attempt to authenticate the supporting documents, beyond these general and conclusory allegations.

Further, instead of addressing each of the expenses for which he seeks reimbursement, Andrew attached to his Opening Memorandum "a random sampling" of five invoices with various expenses presented for reimbursement, accompanied by copies of "available supporting receipt[s]."[12]   I have reviewed this sampling, which seeks reimbursement for several expenses, including the following: airfare, a car rental, and an overnight stay in connection with a trip to meet with the LLC's Costa Rican attorney; cash tips provided to the staff for which there is no receipt; expenses incurred in connection with this litigation, namely copies and notary services; and the purchase of several books for the "St. Lucia library."[13]   None of these supposed expenditures are supported by trial testimony or by post-trial affidavit, as I had allowed in my Post-Trial Letter Opinion of May 16, 2014.

---

[10] Pl.'s Op. Mem. at 2.
[11] *Id.* at 17.
[12] *See id.*; *see also id.* Ex. L.
[13] *Id.* Ex. L.

5

This "sampling," moreover, does not include any description of how these particular expenses benefited Grapetree, if at all. In fact, instead of complying with my request that he "file a memorandum explaining the expenses he incurred and how they benefited Grapetree . . .,"[14] Andrew argues that such a demonstration would contradict the language of the governing Operating Agreement. Specifically, Andrew argues that:

> the Court will err if it imposes rules on to an LLC which the LLC has never enacted and never even discussed. Just because teams of lawyers . . . later 'argue' that 'benefit' should apply here, there is no justification for the court to do so. The LLC made its bed as it is allowed to do and has to sleep in it. Plaintiff's understanding is that no court can modify a properly formed contract [] even a poorly formed one.[15]

Andrew, however, bears the burden of proof in this matter and—as I found in my Post-Trial Letter Opinion—he must demonstrate that each expense for which reimbursement is sought was incurred to benefit Grapetree.

Despite his objection, Andrew—in conclusory fashion—states that his "investments in the LLC's properties produced clear benefit even when and where that concept was unknown to the family."[16] I find this assertion insufficient to demonstrate that each of the expenses for which reimbursement is requested, totaling more than $20,000, benefited Grapetree. For instance, Andrew's "random

---

[14] *Durham*, 2014 WL 1980335, at *7.
[15] Pl.'s Reply Mem. at 11.
[16] *Id.* at 5.

sampling" includes the purchase of several books with the description "St. Lucia library." The benefit to the LLC from these purchases is not facially apparent, and Andrew has not attempted to demonstrate the benefit of this purchase to Grapetree, if any. Further, Andrew notes that he continues to seek reimbursement for a "few unusual items" including "a book Plaintiff published on the history of the St. Lucia house, other marketing materials, dental X-rays for the Costa Rica staff (a bonus), [and] emergency wireless phone calls after a major hurricane struck St. Lucia."[17] No effort has been made to demonstrate how these particular miscellaneous expenses benefited Grapetree, nor to substantiate that such expenses were actually incurred.

Andrew notes that he "has followed a similar process [to his analysis of the "random sampling" of five invoices] with each invoice to determine the revised total amount due," and that he "is prepared to bring to Court all of the invoices and all of the receipts, again, so that each and every one can be examined by all the parties."[18] Citing to Rule 1006 of the Federal Rules of Evidence,[19] Andrew avers

---

[17] Pl.'s Op. Mem. at 18.

[18] *Id.* at 17.

[19] *See* F.R.E. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court."). Rule 1006 of the Delaware Rules of Evidence similarly provides that "[t]he contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for

that "[t]he court should find this random sampling and Plaintiff's willingness to show and share for inspection the entire file adequate."[20]

Although I have shown deference to Andrew as a *pro se* litigant, "self-representation is not a blank check for defect."[21] Following trial, I "reopen[ed] the record for the limited purpose of allowing the Plaintiff to attempt to authenticate the exhibits he contends support his request for reimbursement,"[22] exhibits which he brought to trial but made no attempt to admit or authenticate. I requested that Andrew "file a memorandum explaining the expenses he incurred and how they benefited Grapetree, as well as the documentation to support these requests accompanied by appropriate affidavits."[23] To satisfy his burden, Andrew has submitted an Affidavit, in which he "swears under oath and the penalties of perjury that every document he has submitted is true and correct;"[24] analyzed a "random sampling," in which he does not even attempt to explain the benefit conferred to Grapetree by these expenses; and offered to present his invoices and receipts at yet another Court proceeding. This demonstration is insufficient to meet his burden of showing that the requested reimbursements were actually incurred, supported by

---

examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court." D.R.E. 1006.

[20] Pl.'s Op. Mem. at 17.

[21] *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *6 (Del. Ch. Jan. 2, 2013) (internal quotation marks omitted).

[22] *Durham*, 2014 WL 1980335, at *5.

[23] *Id.* at *7.

[24] Pl.'s Op. Mem. Ex. A.

appropriate documentation, or incurred to benefit the LLC. As Grapetree conceded at trial that Andrew is owed $1,504.90, I find it appropriate to award that amount, plus pre- and post-judgment interest.

I note that Andrew has requested a second hearing in this matter. Although, in my Post-Trial Letter Opinion, I contemplated holding a hearing, if appropriate, the purpose of such a hearing was not to allow Andrew a *third* opportunity to satisfy his burden. To the contrary, this hearing would only be appropriate if Grapetree wished to contest evidence of specific reimbursements sought by Andrew.[25] Because Andrew has not submitted any additional substantive evidence other than his conclusory Affidavit, there is no need to hold an additional hearing in this matter.

C. *Requests to File Motions for Sanctions are Denied*

In his Opening Memorandum, Andrew "requests permission to file a Motion for Sanctions against Defendant and Defendant's counsel for bold, new perjuries to the Court in its 'post-trial closing statement.'"[26] With his Reply Memorandum, Andrew filed a Motion for Sanctions against his sister, Dee Durham, who submitted a Declaration in Opposition to Plaintiff's Post-Trial Memorandum,

---

[25] *See Durham*, 2014 WL 1980335, at *6 ("If any party believes that the affidavits referred to above constitute new evidence subject to cross-examination, that party should seek leave to reopen the trial record for that limited purpose only.").

[26] Pl.'s Op. Mem. at 2. Because motion practice here has been excessive, I have required the parties to seek permission before filing motions.

attached as an exhibit to Grapetree's Answering Memorandum.[27]  He also requests sanctions against the LLC's counsel based on his assumption that they assisted Dee with this Declaration.  I have reviewed Andrew's submissions, and find it inappropriate to allow him to file any additional motions for sanctions.  My decision above is based on Andrew's failure to demonstrate entitlement to reimbursement, not on any submission of his siblings.  It is quite apparent that this pyrrhic and picayune litigation is not about legal or equitable issues but rather inter-family relationships far beyond the power of a court of equity to redress.  Further motion practice is pointless and would be destructive of the limited resources of the LLC in which all siblings hold an interest.  The request to file additional motions for sanctions is denied.

D. *Andrew's Attempts to Reargue are Inappropriate*

In his Memoranda, Andrew also attempts to reargue the portions of my May 16, 2014 Post-Trial Letter Opinion with which he disagrees.  For instance, Andrew insists, in contravention of that decision, that artwork and all travel expenses are reimbursable.  While I invited Andrew, in light of his status as a *pro se* litigant, to submit additional memoranda to substantiate those expenses for which he requests reimbursement, he attempted to use his additional submissions as opportunities to

---

[27] As Andrew has neither requested nor received my permission to engage in additional motion practice, I consider this filing a request to file a motion for sanctions rather than a motion for sanctions.

10

assert his disagreements with my findings. That was not the purpose of these additional submissions, and accordingly, I find Andrew's attempt to reargue issues already decided untimely and improper.

E. *Conclusion*

For the reasons explained above, I find that Andrew is entitled to $1,504.90 in reimbursements from the LLC, plus pre- and post-judgment interest at the legal rate. An appropriate Order accompanies this Letter Opinion.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

11